UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cr-00111-TWP-MJD-2 |
| ) | |
| LEPARIS SHIVERS, ) | |
| ) | |
| Defendant. ) | |

## ENTRY GRANTING MOTION FOR COMPASSIONATE RELEASE

This matter is before the Court on Defendant Leparis Shivers' ("Mr. Shivers") *pro se* Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) of the First Step Act of 2018. (Dkt. 142.) Mr. Shivers seeks immediate release and the reduction of his sentence to time served because he is medically at risk of suffering serious conditions should he contract the Coronavirus. *Id*. For the reasons stated below, his Motion is **GRANTED**.

### I. BACKGROUND

On August 11, 2016, Mr. Shivers pled guilty to Count One: conspiracy to possess with intent to distribute, and to distribute 1 kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Dkt. 52.) On August 3, 2017, this Court sentenced him to 92 months of imprisonment and three years of supervised release. (Dkt. 116; Dkt. 117 at 2, 3.) Mr. Shivers has been in federal custody since June 26, 2015, and has now served approximately 70% of that sentence, or 81% of his sentence when good-time credits are considered. Considering good-time credits, his expected release date is December 30, 2021. (Dkt. 147-2.)

Mr. Shivers is 38 years old.  He is presently incarcerated at the Federal Correctional Institute in Milan, Michigan ("FCI Milan"). Currently, there are 63 inmates and 10 staff are COVID-positive, and three inmates have died.[1]

Mr. Shivers filed his *pro se* motion on July 23, 2020, asserting that he "has several medical hindrances to include, obesity and hypertension and according to the CDC, if he contracts COVID-19, he would most likely cease to exist." (Dkt. 142 at 2.)  On August 9, 2020, Mr. Shivers asked the warden of FCI Milan to approve compassionate release for him based on the risks posed by the COVID-19 outbreak.  (Dkt. 147-3.)   Mr. Shivers exhausted his administrative remedies because more than 30 days have elapsed from the date of his request to the warden.

Mr. Shivers was appointed counsel by the Court on August 21, 2020.  (Dkt. 145.)  His appointed counsel filed a memorandum in support of the Motion on September 23, 2020.  (Dkt. 147.)  The Government filed its Response in Opposition, (Dkt. 151), on October 8, 2020, and Mr. Shivers filed his reply, (Dkt. 152) on October 15, 2020. Thereafter, on December 1, 2020, the Government filed a Notice of Supplemental Authority, noting that the Seventh Circuit has recently held that the Sentencing Commission's policy statement does not apply to motions for compassionate release filed by prisoners. *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020). The merits of the Motion for Compassionate Release are ripe for the Court's consideration.

## II.  DISCUSSION

Mr. Shivers argues that the Court should order his immediate release because his medical conditions—obesity and hypertension—place him at high risk for severe illness from COVID-

---

[1] Federal Bureau of Prisons, "COVID-19 Coronavirus," https://www.bop.gov/coronavirus/ (last updated Dec. 9, 2020).

19. He contends that his medical conditions and his race—African-American—along with the number of positive COVID-19 cases at FCI Milan, amount to extraordinary and compelling reasons for release. In addition, he argues that he is not a danger to the community and that the sentencing factors in 18 U.S.C. § 3553(a) favor his release.

The Government opposes the Motion, arguing that the sentencing factors in 18 U.S.C. § 3553(a) weigh against release. It asserts the Court should not release Mr. Shivers, a significant player in a heroin trafficking conspiracy who was responsible for distributing this dangerous and deadly drug to the Indianapolis, Indiana community. Mr. Shivers' advisory guideline sentence was 151-188 months imprisonment. At the time the Court sentenced Mr. Shivers to 92 months' imprisonment, it took into account several factors, giving him not only a 3 levels below-guideline sentence as recommended by the Government (110-137 months), but also considered 3553(a) factors in finding a variance of 92 months was sufficient but not greater than necessary. The Government argues to release Mr. Shivers early would amount to a significant additional downward variance or departure that is unwarranted by any changed circumstances. It contends Section 3553(a) demands that Mr. Shivers serve his full term of imprisonment.

The Government concedes that Mr. Shivers' morbid obesity and history of smoking qualify as risk factors pursuant to the Centers for Disease Control and Prevention ("CDC"), and therefore constitute extraordinary and compelling circumstances. (Dkt. 151 at 20-21.) However, the Government argues this should not result in Mr. Shivers' release because FCI Milan is not a Covid-19 hotspot—a point that no longer is true. The Government also argues that Mr. Shivers has contributed to these health issues because he buys unhealthy snacks on commissary. (Dkt. 151 at 3-4.) It notes that Mr. Shivers' Commissary purchase receipts for 2020 alone show a startling number of junk food purchases, to include cupcakes, candy bars, cookies, as well as

3

meat-style snack sausages and sticks. *Id*. at 3. It also notes that prior to his incarceration, Mr. Shivers engaged in the unhealthy habit of smoking a pack of cigarettes a day for 20 years. *Id*.

### A.  Legal Standard

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination

5

with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . )." It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *Gunn*, __ F. 3d __, 2020 WL 6813995, at *2. And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

**B.      Extraordinary and Compelling Reasons**

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D).

Mr. Shivers does not suggest that subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case. The Government concedes that it does, and the Court agrees.

Mr. Shivers suffers from morbid obesity with a body mass index ("BMI") of 48.1, hypertension, and a sleep disorder (preliminarily diagnosed as sleep apnea), and he smoked a pack of cigarettes daily for about 20 years before his incarceration. (Dkt. 147-1 at 1.) The CDC states that being obese with a BMI of 30 or higher increases an individual's risk of severe complications from COVID-19, and hypertension may increase one's risk for severe illness.[2] *See id*. The CDC guidelines also indicate that people of any age who are former cigarette smokers

---

[2] CDC, "Coronavirus Disease: People With Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 1, 2020).

7

may be at an increased risk of severe illness from COVID-19.[3]  According to researchers at the University of California-San Francisco, a meta-analysis of studies that included 11,590 COVID-19 patients suggests that the risk of disease progression in those who currently or previously smoked cigarettes was nearly double that of non-smokers.[4]  As such, Mr. Shivers has multiple health conditions which place him, or might place him, at high risk of serious complications if he were to become infected with COVID-19.

The Government conceded that Mr. Shivers' obesity and history of smoking constitute extraordinary and compelling circumstances.  (Dkt. 151 at 20-21.)  However, the Government contends that Mr. Shivers' obesity should not lead to his release because he contributes to it through his snack choices and lack of exercise.  This argument is unpersuasive.  Mr. Shivers' health records show he is making efforts to increase his exercise and reduce his consumption of unhealthy foods.  (*See e.g.* Dkts. 151-1, 151-2, 151-7.)  Pandemic-related lockdowns have limited his opportunities to exercise. (Dkt. 152 at 6.)  And given that Mr. Shivers' BMI is over 40 and weight loss is a difficult endeavor, it is unlikely that even a herculean effort to lose weight would reduce his risk of severe illness were he to contract COVID-19 during the remaining months of his incarceration.  The Court will not discount Mr. Shivers' health risks just because he has not consistently made healthy eating choices, especially given the current outbreak of COVID-19 at FCI Milan.

In addition, multiple courts have concluded that most of the recommended measures to prevent infection are impossible or not feasible in prison.  *See, e.g.*, *United States v. Zukerman*, No. 16-cr-194-AT, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) ("Given that inmates at

---

[3] *Id.*

[4] UCSF, "Smoking Nearly Doubles the Rate of COVID-19 Progression," May 12, 2020, https://www.ucsf.edu/news/2020/05/417411/smoking-nearly-doubles-rate-covid-19-progression#:~:text=In%20a%20meta%2Danalysis%20of,double%20that%20of%20non%2Dsmokers.

Otisville live in close quarters, social distancing is impracticable if not impossible, making it difficult for Zukerman to protect himself from the spread of this dangerous and highly contagious virus."); *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *5 (E.D. Penn. May 4, 2020) ("Prisons are ill-equipped to prevent the spread of COVID-19. Many of the recommended measures to prevent infection are impossible or unfeasible in prison."). Mr. Shivers is assigned to a dormitory-like housing unit with 70 inmates who are assigned to bunk beds and share two urinals and three toilets. Thus, Mr. Shivers is at an increased risk of severe symptoms if he contracts COVID-19 and cannot take appropriate measures to protect himself.

The Court finds that the combination of Mr. Shivers' medical conditions that place him at high risk of serious complications from COVID-19 and his inability to take measures to protect himself while incarcerated, establish extraordinary and compelling reasons for his release. *See, e.g.*, *United States v. Quintanilla*, No. 3:00-cr-25-RLY-MPB-1, Dkt. 72 (S.D. Ind. July 9, 2020) (finding extraordinary and compelling reasons for a sentence reduction where defendant had multiple conditions that placed him at greater risk of developing severe symptoms if he contracted COVID-19 and could not take measures to protect himself); *United States v. Rodriguez*, 2:03-cr-00271-AB-1, 2020 WL 1627331, at *2 (E.D. Penn. April 1, 2020) (granting compassionate release to inmate with diabetes, obesity, and hypertension who served 17 years of a 20 year sentence for drug and firearm offenses).

### C.   **Danger to Any Other Person or to the Community**

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) is the provision outlining the

factors the Court must consider in determining whether a defendant should be detained pending trial. In turn, § 3142(g) provides:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> > **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> > **(2)** the weight of the evidence against the person;
> > **(3)** the history and characteristics of the person, including--
> > > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> > **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Shivers' crime was indeed serious, and the weight of the evidence against him was strong. In the factual basis for his plea agreement, Mr. Shivers admitted under oath that he and his co-defendant, Cory Williams, distributed large amounts of heroin in Indianapolis. (Dkt. 39 at 8-9.) When he was arrested, Mr. Shivers had over $2,000.00 and approximately 30 grams of heroin on his person. (Dkt. 53 at 5, Dkt. 39 at 7.) When law enforcement searched Mr. Shivers' home, they found ammunition, drug paraphernalia, seven firearms, over $13,000.00, and nearly 770 grams of heroin. (Dkt. 39 at 9-10.) Mr. Shivers admitted that he was a previously convicted felon and that he had purchased and kept several firearms at his home. *Id.* at 10.

While the Court shall "take into account the available information concerning the nature of circumstances of the offense charged," 18 U.S.C. § 3142(g)(1), the fact that the offense involved a controlled substance is not dispositive.  The offense was not a crime of violence.  Although Mr. Shivers was Indicted for 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm,  he was not charged with the use of a firearm. (*see* Dkt. 1 at 7).

Mr. Shivers' criminal history includes convictions for burglary, possession of a stolen vehicle, unlawful delivery of cannabis, driving without a license, and possession of marijuana. (Dkt 110 at 7-8.)   While his criminal history is not insignificant, the Court observes that Mr. Shivers committed the first three crimes at the age of 18, and he is now 38.

Critical to the Court's decision, Mr. Shivers has served over 80% of his sentence, and his prison record weighs in his favor.  Mr. Shivers has received only one disciplinary charge during his years in prison for "refusing to obey an order" in 2017.[5]  (Dkt. 151-9.)  Mr. Shivers has earned his GED, completed drug education, was a non-residential drug counsel participant, and has taken various education courses.  (Dkt. 142-1.)

Mr. Shivers intends to reside with his mother in Rockford, Illinois.  His mother informed appointed counsel that she has an extra bedroom in her home, her home is drug-free, and she will support him as he pursues employment opportunities.[6] (Dkt. 127 at 24-25.) These circumstances will help support him in his re-entry to society without endangering the community. The Court finds pursuant to § 3142(g) that Mr. Shivers' release from incarceration will not threaten the safety of the general public if his sentence is reduced to time served.  However, because the

---

[5] The Government notes that Mr. Shivers was placed in the secured housing unit for two months in 2018 preceding his transfer to another facility for, according to his doctor's notes, "getting into trouble." (Dkt. 151 at 10.) Mr. Shivers responds that he was placed there for reasons unrelated to his own behavior, (Dkt. 152 at 10), which the Court credits since his disciplinary record shows only the one minor incident.

[6] Because a re-entry plan is important to the Court's decision, the Court advises appointed counsel to obtain an affidavit in future cases rather than relay information in the memorandum of support.

11

Court is concerned about Mr. Shivers' possession of firearms while he was selling heroin, the Court finds it appropriate to order that the first year of supervised release to be under conditions of home detention with GPS monitoring.

### D. Section 3553(a) Factors

In evaluating a motion for compassionate release, the next consideration is whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence. *United States v. Ebbers*, No. S402-CR-11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (granting compassionate release to 75-year-old securities fraud defendant after serving 13 years of a 25-year sentence due to significant health issues). In this case, they do not.

Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.—**The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > **(B)** to afford adequate deterrence to criminal conduct;
> > **(C)** to protect the public from further crimes of the defendant; and
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence[s] and the sentencing range established for--
> > **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]

> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As discussed above, Mr. Shivers has several prior convictions—but no convictions for crimes of violence--and the crime he committed was serious. However, Mr. Shivers has served the vast majority of his sentence, and he has only a little more than a year remaining until he is released. Moreover, he will serve an additional 12 months under conditions of home confinement with GPS monitoring. The sentence that has already been served plus the three-year term of supervised release (including one year on home detention) reflects the seriousness of the crime. Importantly, Mr. Shivers has taken advantage of the educational opportunities that prison offered. When combined with Mr. Shivers' increased risk of developing severe COVID-19 symptoms and the current outbreak of COVID-19 at FCI Milan, these facts tip the balance in favor of granting Mr. Shivers' request for compassionate release.

Accordingly, the Court concludes that further incarceration is not needed to deter Mr. Shivers from further offenses; nor, for the reasons described above, is it necessary to protect the public from future crimes. He has served a significant sanction for his drug offense and will serve an additional year on home detention. Under these circumstances, further incarceration would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2).

### III. CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Shivers' sentence, that Mr. Shivers does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that the reduction is consistent with the Sentencing Commission's policy

statements. Therefore, the Court **GRANTS** Mr. Shivers' Motion for Compassionate Release, (Dkt. [142]), **ORDERS** that Mr. Shivers' sentence of imprisonment be reduced to **time served as of Tuesday, December 15, 2020,** and further **ORDERS** the BOP to release Mr. Shivers by **5:00 p.m. on Wednesday, December 16, 2020**. Contemporaneously with the docketing of this Entry, the Court is docketing a Form AO248 Order granting Mr. Shivers' Motion. Counsel for the United States is **ORDERED** to transmit the AO248 Order to Mr. Shivers' custodian within **24 hours after the AO248 Order is docketed**.

The **term of supervised release remains three (3) years**. The terms of supervised release imposed in the Judgment of August 8, 2017, remain the same with the addition of the following conditions:

As per his transition plan, Mr. Shivers must reside at the home of his mother; the first year of Mr. Shivers' supervised release will be served **under conditions of home detention with GPS monitoring** with permission to leave his residence with his probation officer's approval.

Immediately upon his release Mr. Shivers is further **ORDERED** to comply with any period of quarantine directed by medical staff and/or any state or local health authority-but no shorter than 14 days of self-quarantine.

    **SO ORDERED.**

Date: 12/11/2020

                                                                Hon. Tanya Walton Pratt, Judge
                                                                United States District Court
                                                                 Southern District of Indiana

DISTRIBUTION:

Kathryn Y. DiNardo
DiNARDO LAW, P.C.
kate@dinardolawoffice.com

M. Kendra Klump
UNITED STATES ATTORNEY'S OFFICE
kendra.klump@usdoj.gov

MaryAnn Totino Mindrum
UNITED STATES ATTORNEY'S OFFICE
maryann.mindrum@usdoj.gov